UNITED STATES of America, Plaintiff,

v.

William MARTINEZ, Lolo Perez, Dimas Hernandez, Yadeah Ardilla, Jose Castro, and Roberto Piedrahita, Defendants.

**Crim. No. 88–0328CC.**

United States District Court, D. Puerto Rico.

April 20, 1989.

Warren Vázquez, Guaynabo, P.R., and Carlos Pérez, Asst. U.S. Attys., for plaintiff.

Luis Medina, Lydia Lizarríbar, Old San Juan, P.R., Frank Pola, Hato Rey, P.R., Luz M. Ríos, Robert J. Sicilia, Santurce, P.R., José C. Romo–Matienzo, Hato Rey, P.R., for defendants.

## ORDER

CEREZO, District Judge.

All of the defendants have presented a verbal motion to dismiss the indictment based on prosecutorial misconduct which was argued in open court, outside the presence of the jury, by attorneys Lydia Lizarríbar and Frank Pola.

The essence of their motion lies in the contention that the transcript of the testimony of the only witness presented before the grand jury reveals that statements made by him, material to the case, were false, as undisputedly shown by the government's own evidence in the case in chief. The movants charge prosecutorial misconduct in that the Assistant U.S. Attorney who appeared before the grand jury allowed the presentation of false information before that investigative body.

The government has provided the Court in chambers with a copy of *United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1982), in support of its position that any error in the grand jury proceeding connected with the charging decision, mea-sured by the petit jury's guilty verdict, was harmless beyond a reasonable doubt.

It is important to look closely at the facts and circumstances of both *Mechanik* and the case at bar. At the time that the government's attorney concluded his presentation of evidence before the grand jury, and immediately before a grand juror asked questions which unleashed the false information provided by the witness, the testimony of Agent Nieves, whose sources of information obviously were the Coast Guard officers, was to the effect that, on August 26, the Navy vessel McCloyd spotted the motor vessel KIKO which was apparently sinking, that they asked permission to board the vessel which was denied, that Coast Guard officers followed the KIKO, that they picked up a bale which tested positive for marihuana, that the bale was found in the surroundings, making a trail of the vessel KIKO, that 68 bales were counted and that there were video tapes of those bales floating in the water, that they boarded the KIKO in the morning after being granted permission and found residues of marihuana in different parts of the vessel, that 13 bales were recovered from the high seas, that they were trailing from the KIKO to the Navy boat, that they had a Honduran flag on the vessel, and that the Honduran government gave permission to board.

Upon conclusion of his presentation, Assistant U.S. Attorney Carlos Pérez started, "I don't have any further questions, are there any questions from the members of the grand jury regarding the facts of this case?" At that point in time, one juror addressed the witness and said, "I have a question. You were called to the Ponce office when these gentlemen were brought to the Port of Ponce?" To this Mr. Nieves answered, "Yes, Sir." Then the juror immediately asked, "How did you determine that the thirteen bales that were recovered at sea were from the KIKO?" The witness answered at page 10, lines 3–6 of the Grand Jury Proceedings transcript of September 7, 1988: "We have the testimony of the crew members of the Coast Guard that were in the neighborhood at the moment,

where they certified that they were their bales." The following dialogue then developed between the witness and Assistant U.S. Attorney Pérez, which were the last statements made before the grand jury went to deliberate:

THE WITNESS: In the package they gave me, there is a part of the statement that says that "while they were throwing the bales, they were spotting them with chemical lights." I assume that they saw it.

ASSISTANT U.S. ATTORNEY PEREZ: In addition, they got it in a video tape?

THE WITNESS: That's right.

ASSISTANT U.S. ATTORNEY PEREZ: Where they put them in the water and the crew members of the vessel KIKO throwing them into the water?

THE WITNESS: That's correct, sir.

The unequivocal testimony of officer Paul J. McGuirck at trial was that he saw no one throw bales, and that as far as he knows, no one from the Coast Guard saw anyone throwing bales. He flatly stated that, "we never got close enough to see anyone come on deck and throw something." Rosen, the only other witness who was on board the Navy vessel, made no mention of observing KIKO crew members dumping bales overboard. The video tape which has been in the government's possession, and which was viewed by the defendants and their attorneys, shows no instances of such conduct by KIKO crew members, as confirmed by the government's attorney at trial. This is the same video to which the grand jury witness referred.

The *Mechanik* case involved the simultaneous appearance of two witnesses before the grand jury, in violation of Rule 6(d) of the Federal Rules of Criminal Procedure. In that case two indictments had been returned by the grand jury, each was returned by a unanimous vote and, both agents had testified *separately* before the same grand jury in support of the first, *untainted* indictment, "giving the grand jury ample opportunity to weigh the credibility of each agent prior to their joint appearance." *Id.* 106 S.Ct. at 946. Fur-

thermore, since both agents had access to all grand jury materials, the likelihood that their joint testimony created a potential for collusion was minute. The analysis made by Justice Rehnquist, assumed for the sake of argument that the violation of Rule 6(d) existed and that the district court would have been justified in dismissing portions of the indictment if it had been brought to its attention before commencement of the trial. The Court granted that the defendants had acted diligently in presenting their dismissal motion, since they did not learn about the Rule 6(d) violation until two weeks after trial began when the government furnished them with a transcript of the grand jury testimony. In that case, the trial judge took the dismissal motion under advisement and denied it after the petit jury had returned its guilty verdict. This was a three-month trial which had resulted in enormous expense to the government and to the defendants. The factor of the timing was crucial in the Rehnquist opinion which essentially held that, measured by the petit jury's guilty verdict, any error in the grand jury proceeding was harmless. Justice Rehnquist reasoned that there is no simple way *after* the verdict to restore the defendant to the position in which he would have been had the indictment been ˏdismissed before trial; "[h]e will already have suffered whatever inconvenience, expense, and opprobrium that a proper indictment may have spared him." *Id.* 106 S.Ct. at 942. Justice Rehnquist went on to comment on the substantial social cost that the reversal of a conviction entails. The concurring opinion of Justice O'Connor, joined by Justices Brennan and Blackmun, alert to the dangers of the analysis adopted in the Rehnquist opinion, charging that it effectively rendered the rules governing the conduct of grand juries a dead letter. In Justice O'Connor's view, "[t]he Court's focus on the effect of the verdict ... gives judges and prosecutors a powerful incentive to delay consideration of motions to dismiss based on an alleged defect in the indictment until the jury has spoken. If the jury convicts, the motion is denied; if the jury acquits, the matter is mooted," thus exposing "to the ordeal of trial any

defendants who would otherwise have a right to dismissal of the indictment, and undermines adherence to the very measures that this Court proposed and Congress implemented to guarantee that the grand jury is able to perform properly its screening function." Justice O'Connor concurred in the result *only* because in the specific situation of the *Mechanik* case the violation was harmless, given the fact that there was an untainted first indictment before the same grand jury that issued the superseding indictment that was tainted.

In any event, the opinion of the Court in *Mechanik* has to be placed in its proper perspective: The Rehnquist opinion is issued by the Supreme Court of the land, after a district judge withheld a ruling and awaited a period of two and a half months until the jury had spoken, to then deny the dismissal motion. Faced with the enormous expense of the three-month trial, and after things developed as they had, Justice Rehnquist felt justified in affirming. "The moving finger writes, and having writ, moves on." In other words, desert winds blow over the sands, and having blown, erase all traces.

In the case before us, there is a trial judge who can choose to rule on the motion to dismiss now, or who can, under the aegis of the Rehnquist opinion, delay the Court's ruling until after the jury's verdict is received, knowing that, even in the face of a violation of grand jury proceeding, a guilty verdict would cure it all. And that, constitutes a moral dilemma for a trial judge to whom the motion to dismiss could not have been presented before this date, and who should not have to wait for a jury verdict to bail her out of her duty to decide.

The choice is clear. The court will decide now. The evidence presented to the grand jury was circumstantial evidence that was interpreted by a person not at the scene of the events. The juror who questioned the witness asked point blank if he was at Ponce when the defendants were brought, and knowing that Mr. Nieves was not on the high seas, he then asked: "How did *you* determine that the thirteen bales recovered at sea were from the KIKO?"

This question goes directly to the issue of probable cause to believe that the targets of the investigation had committed a crime. He or she wanted answers to establish a nexus. What ensued is a dialogue between Assistant U.S. Attorney Pérez and agent Nieves wherein, far from a scenario of circumstantial events, they move to the safer terrain of direct evidence, to wit: a video where the witness states that the crew members were taped while they dumped the bales into the water. This information, as must be conceded by the government, was false and Assistant U.S. Attorney Pérez was either negligent in allowing it to go to the grand jury or condoned it. The government, faced with this obviously false testimony, could have cleared it up before the grand jury, or else, sought a superseding indictment at a later date. Because neither action was taken, we find ourselves at this juncture today.

Dismissal of an indictment is appropriate if it is established that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt as to whether it had such an effect. Certainly, in the circumstances of this case, the Court has grave doubt as to whether the act of providing false information to the grand jury influenced its decision to indict.

For the reasons, stated, the motion to dismiss is GRANTED as to all defendants. Judgment of discharge will be entered.

This is the second time that the Court has in the past two months found that members of the U.S. Attorney's office of this District have engaged in misconduct before the grand jury. This matter will be taken up before the entire court, as is within the scope of its supervisory powers over the grand jury proceedings.

SO ORDERED.