UNITED STATES of America, Plaintiff,

v.

Jose Juan LAMELA VAZQUEZ, et al., Defendant.

Crim. No. 89–103(JP).

United States District Court, D. Puerto Rico.

Sept. 12, 1989.

Warren Vázquez, Asst. U.S. Atty., Hato Rey, P.R., for plaintiff.

Luis F. Camacho, Cayey, P.R., Luis F. Abreu Elías, Hato Rey, P.R., for defendant.

## OPINION AND ORDER

PIERAS, District Judge.

This case comes before the Court on the defendants' objections to the Report and Recommendation of Magistrate Justo Arenas on their motion to suppress the fruits of a search of their persons conducted by U.S. Customs agents at the Luis Muñoz Marin International Airport.

The facts, as he found them after an evidentiary hearing, were stated by the Magistrate in detail in the Report and Recommendation. In some particulars the facts are in dispute, but most of the disputes have no bearing on the outcome. To summarize the facts, the two defendants, brothers, were passengers on Iberia Airlines flight 914 from Bogotá, Colombia, to Madrid, Spain. The flight had a scheduled stop in Puerto Rico, and the defendants disembarked in the transit lounge. Defendant José Lamela was wearing baggy pants and had a "bulky mid section," and, based on a "hunch," was stopped by Customs inspectors and asked for his ticket and passport. He presented his own ticket and that of James Lamela, his brother, and pointed James out to the inspectors. He looked quite nervous and began to sweat.

Based on the foregoing, the agents conducted a pat-down search of José, which confirmed that he was carrying something around his waist. The place where the pat-down was done is in dispute, but subsequently, in a private area, José was instructed to drop his pants, and a girdle containing cocaine was found.

The agents arrested José and then went looking for his traveling companion and brother, James. James was found in a restroom throwing "something" in a trash can. He was told to lean against a wall while the agent looked in the trash can and pulled out a raincoat which contained packages of cocaine. The agents then patted James down, felt something, instructed him to remove his trousers, and found a girdle containing cocaine in his groin area.

■The First Circuit has held that searches of in-transit passengers at San Juan's airport are border searches. *United States v. McKenzie*, 818 F.2d 115, 119–20 (1st Cir.1987); *United States v. Mejia–Lozano*, 829 F.2d 268, 271 (1st Cir.1987); *United States v. Franchi–Forlando*, 838 F.2d 585, 587–88 (1st Cir.1988). In-transit passengers have no more protection against routine, suspicionless border searches than do arriving passengers. *United States v. Mateos–Sánchez*, 864 F.2d 232, 239 (1st Cir.1988). A border search can be made by customs agents with no suspicion whatsoever, *United States v. Ramsey*, 431 U.S. 606, 622, 97 S.Ct. 1972, 1981, 52 L.Ed.2d 617 (1977); *United States v. Montoya de Hernández*, 473 U.S. 531, 538, 105 S.Ct. 3304, 3309, 87 L.Ed.2d 381 (1985), and the basis for selecting subjects to search is not questioned: it can even be based on ethnicity.[1] *United States v. Martinez–Fuerte*, 428 U.S. 543, 562–63, 96 S.Ct. 3074, 3085, 49 L.Ed.2d 1116 (1976); *Montoya*, 473 U.S. at 538, 105 S.Ct. at 3309. "More intrusive border searches of

the person such as body cavity searches or strip searches, however, require at a minimum reasonable suspicion of criminal activity." *United States v. Charleus*, 871 F.2d 265, 267 (2d Cir.1989).

■ The search of José began by the agents asking him questions and requesting his tickets and passport. José became nervous, and the bulky area at his waist attracted the agents' attention. While the pat-down search they then conducted may not qualify as routine, a point the Court does not address here, *but see United States v. Oyekan*, 786 F.2d 832, 835 (8th Cir.1986) (border pat-down routine and unrestricted by fourth amendment), the agents were endowed with a level of reasonable suspicion sufficient to conduct a pat-down. Reasonableness depends on the circumstances. The suspicion the agents had based on José's country of departure (Colombia, a known drug source), his demeanor, the bulky area at his waist, his clothing, and his responses to their questions was sufficient under the circumstances to justify a search which is only as intrusive as a pat-down.[2]

■ Once the agents felt the girdle under José's clothes, and in light of their previous suspicion, they had ample suspicion to instruct him to remove his trousers and to inspect the girdle. Such searches involving removal of an item of clothing such as a skirt or trousers do require reasonable suspicion, *United States v. Wardlaw*, 576 F.2d 932, 934 (1st Cir.1978); *United States v. Moody*, 649 F.2d 124, 127 (2d Cir.1981); *but see United States v. Braks*, 842 F.2d 509, 514 (1st Cir.1988) (instruction to lift skirt, revealing only undergarments, held routine search, with the "no suspicion" standard applicable), but that level of suspicion was more than present when the

---

**1.** This does not mean that the fourth amendment does not apply. Its only relevant prescription is that all searches must be "reasonable," and routine border searches are *per se* reasonable.

**2.** *United States v. Sokolow*, 490 U.S. ——, ——, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1, 10 (1989) held that reasonable suspicion requires more

than a "hunch," and based on some of the testimony the defendants contend that the agents only had a hunch. A hunch is *more* than is needed to justify a routine border search, but even if the pat-down was not routine, objectively the agents had reasonable suspicion no matter how they phrased the amount of suspicion they had.

agent felt the girdle while conducting the pat-down. The search of José was therefore reasonable under the fourth amendment and his motion to suppress is DENIED.

After the cocaine was found on José, the agents looked for and found James in the restroom. They knew that James was the brother and traveling companion of José, who was engaged in smuggling cocaine, and when they found him he was throwing "something" into the restroom trash can. The agents instructed him to lean against the wall while they inspected the raincoat that was in the trash can. The defendants do not, of course, contend that the search of the raincoat was unreasonable.

Given the agents' discovery of cocaine in the raincoat, and their knowledge that James was traveling from a known drug source country in the company of a known drug smuggler, they had reasonable suspicion to conduct a pat-down (if reasonable suspicion is even necessary), if not probable cause to arrest him. Upon detecting the girdle similar to José's, the agents had reasonable suspicion to require him to remove his trousers and to inspect the girdle. Thus, the search of James was also reasonable, and his motion to suppress must also be DENIED.

Upon the oral request of defense counsel, the deadline for submission of proposed voir dire and jury instructions is extended two days until September 13, 1989.

IT IS SO ORDERED.