925 F.2d 506
 UNITED STATES of America, Appellee,
v.
Carlos VALENCIA-LUCENA, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Jose Manuel BASTIAN-CORTIJO, Defendant, Appellant.
UNITED STATES of America, Appellee,
v.
Edwin CARPIO-VELEZ, Defendant, Appellant.
UNITED STATES of America, Appellant,
v.
Jose LLADO-ORTIZ, Defendant, Appellee.
UNITED STATES of America, Appellant,
v.
Carlos VALENCIA-LUCENA, Defendant, Appellee.
UNITED STATES of America, Appellant,
v.
Edwin CARPIO-VELEZ, Defendant, Appellee.
UNITED STATES of America, Appellee,
v.
Roberto LABOY, Defendant, Appellant.
UNITED STATES of America, Appellant,
v.
Roberto LABOY-DELGADO, Defendant, Appellee.
UNITED STATES of America, Appellant,
v.
Jose M. BASTIAN-CORTIJO, Defendant, Appellee.
 Nos. 90-1073, 90-1112, 90-1114, 90-1153, 90-1155, 90-1229 to
90-1231.
 United States Court of Appeals,
First Circuit.
 No. 90-1153 Submitted Sept. 26, 1990.
Nos. 90-1073, 90-1112, 90-1114, 90-1154, 90-1155, 90-1229,
90-1230 and 90-1231 Heard Nov. 8, 1990.
Decided Feb. 7, 1991.
 
 Carlos Lopez-de Azua, with whom Jose R. Ortiz-Velez, was on brief for appellant and appellee Carlos Valencia-Lucena.
 Lydia Lizarribar-Masini, for appellant and appellee Roberto Laboy.
 Thomas M. Dawson, for appellant and appellee Edwin Carpio-Velez.
 Julia M. Garriga, for appellant and appellee Jose Manuel Bastian-Cortijo.
 Sean Connelly, Atty., U.S. Dept. of Justice, with whom Daniel F. Lopez-Romo, U.S. Atty., and Jorge E. Vega-Pacheco, Asst. U.S. Atty., were on brief for appellant and appellee U.S.
 Before CAMPBELL, TORRUELLA and CYR, Circuit Judges.
 TORRUELLA, Circuit Judge.
 
 
 1
 Five defendants, Jose Llado-Ortiz, Carlos Valencia-Lucena, Edwin Carpio- Velez, Roberto Laboy-Delgado and Jose Bastian-Cortijo,[1] were convicted in the United States District Court for the District of Puerto Rico under 21 U.S.C. Secs. 841(a)(1) and 846 for conspiring to knowingly, willfully, intentionally and unlawfully possess with intent to distribute 137.2 kilograms of cocaine and under 21 U.S.C. Secs. 952 and 846 for conspiring to knowingly, willfully, intentionally and unlawfully import from Colombia, South America, into the United States 137.2 kilograms of cocaine. In addition, defendant Llado-Ortiz was convicted under 21 U.S.C. Sec. 843(b) for using a communication facility in the form of a telephone to facilitate the commission of a crime. On appeal, all defendants challenge the district court's refusal to dismiss their various indictments based upon a finding of prosecutorial misconduct before the grand jury. In addition, defendants Laboy-Delgado, Bastian-Cortijo and Carpio-Velez challenge the sufficiency of the evidence; defendants Bastian-Cortijo and Carpio-Velez contest the fact that the district court refused to provide a limiting instruction after two jurors saw the defendants in handcuffs; defendant Bastian-Cortijo claims that the prosecution committed Brady violations by failing to inform the defense that the confidential informant was a drug user; and defendant Bastian-Cortijo argues that the district court erred in not finding him a "minimal" or "minor" participant thereby reducing his base offense level under the federal sentencing guidelines. The government cross-appeals on the issue of sentencing. Defendant Llado-Ortiz has been dismissed as an appellant following his recent escape from custody; however, he remains an appellee in the government's cross-appeal. For the reasons set forth below, we affirm all convictions; however, we find it necessary to vacate and remand for resentencing.
 
 I. APPEAL
 Facts
 
 2
 The conspiratorial acts leading to conviction of the five defendants before us on appeal were brought to the attention of the government by confidential informant Rafael Vazquez. Vazquez first met co-conspirator Carlos Valencia-Lucena in the summer of 1988. At that time Vazquez was himself involved in drug trafficking and was in search of an airplane to be used for importing marijuana from Jamaica. On or about December 15, 1988, Valencia-Lucena contacted Vazquez and informed him that he had a plane but that it was first scheduled to be used for a cocaine haul from Colombia, for which Vazquez' aid was solicited. Vazquez was asked if he could secure a "safe haven" airstrip in Virgin Gorda, British Virgin Islands. Then a few days later he was asked if he would also aid in recovering several "Igloo" coolers filled with cocaine which were to be dropped in the ocean upon the airplane's return from Colombia. On or about December 19, 1988, however, Vazquez decided to turn himself in to the Federal Bureau of Investigation ("FBI"). FBI agent Abe Maldonado brought in Drug Enforcement Administration ("DEA") agent Enrique Nieves, who subsequently became the agent in charge of this case. From that time on, Vazquez acted as confidential informant for Nieves, reporting to Nieves regarding the various activities of persons connected with the conspiracy.
 
 
 3
 Each of the five defendants was assigned a specific role in the conspiracy. Llado-Ortiz was the owner of the airplane, Cessna 411 registration number N3264R, and chief organizer of the operation. Valencia-Lucena was selected to pilot the aircraft from Puerto Rico to Colombia, returning via the Virgin Islands where the drop was to take place. Co-conspirator Bastian-Cortijo was recruited as "kicker," to ride in the airplane with Valencia-Lucena and throw the coolers from the aircraft into the water below. Co-conspirator Carpio-Velez was at one point identified as the owner of the cocaine and reappeared at various crucial times throughout the conspiracy. Co-conspirator Laboy-Delgado was recruited for his mechanical skill with watercraft when it became necessary to perform some repair work on one of the boats in the Virgin Islands.
 
 
 4
 The original flight date was set for December 24, 1988; however, mechanical problems with the airplane and with the retrieval boats caused the operation to be postponed until December 31, 1988. In the early morning of December 31, the Cessna 411 took off from the Isla Grande airport in San Juan, Puerto Rico, reportedly headed for Colombia. Vazquez and several other individuals were waiting in the water near King Fish Banks, the original drop site, at approximately 3:45 p.m. The plane was expected to arrive at 4:00 p.m. The plane, however, flew faster than expected and reached the drop site before the retrieval boats. Upon sighting what appeared to be a coast guard cutter in nearby waters, the plane headed for an alternate drop site off the coast of Ginger Island. About that same time, a British Customs Service official observed a low-flying aircraft bearing a registration number beginning with the letter "N" make several figure-eight flight patterns over the area and then head toward Virgin Gorda. The Cessna 411 did in fact land at the Virgin Gorda airport shortly after 4:00 p.m., and was the only aircraft to do so within that time period. Valencia-Lucena was identified as the pilot.
 
 
 5
 From that moment on, operations began to sour for the conspirators. The Cessna 411 was detained by officials in Virgin Gorda because it did not possess the proper landing permits. Moreover, although the drop had been successful,[2] retrieval efforts were continually hindered by malfunctioning equipment on the conspirators' boats. The efforts of two additional individuals, identified at trial as Kelvin and Dennis Stevens, had to be enlisted to aid in recovery of the cocaine, and even then only six of an alleged ten coolers were recovered. Meanwhile three of the conspirators were arrested, and the Stevens brothers began demanding greater compensation for their efforts. Llado-Ortiz eventually appeased the Stevens brothers with a pay-off of $5000 and 30 kilograms of cocaine; however, the cocaine was not returned to the conspirators, and subsequently turned over to the government by confidential informant Vazquez, until January 6, 1989, two days after the official end to the conspiracy.
 
 Discussion
 1. Prosecutorial Misconduct
 
 6
 In the instant case, all defendants except Carpio-Velez were charged in the original indictment obtained on January 4, 1989. On January 18, 1989, a superseding indictment naming Carpio-Velez was obtained. Then on May 10, 1989, a second superseding indictment was sought in order to correct errors in the previous two indictments. At trial, all five defendants were convicted by a petit jury.
 
 
 7
 Federal Rule of Criminal Procedure 12(b)(1) and (2) states that "[t]he following must be raised prior to trial:"
 
 
 8
 (1) Defenses and objections based on defects in the institution of the prosecution; or
 
 
 9
 (2) Defenses and objections based on defects in the indictment or information.
 
 
 10
 Defendants in this case did not raise the issue of prosecutorial misconduct during grand jury proceedings prior to trial. This, however, does not preclude review on the merits of their claim. This court has held that because grand jury materials are frequently not made available to the defense until after the commencement of trial, we will allow review of the issue on its merits despite the fact that the issue may have been technically raised late. United States v. Latorre, 922 F.2d 1, 6 (1st Cir.1990).
 
 
 11
 The only witness before the grand jury was Agent Nieves. Defendants claim that Agent Nieves' testimony was replete with perjury, that the government either cooperated with Agent Nieves or was negligent in allowing him to testify falsely, that this prosecutorial misconduct rose to the level of a due process violation, and that as a result the various indictments against the defendants should be dismissed. Although we agree with the district court that this case clearly demonstrates the dangers of relying solely upon hearsay evidence during grand jury proceedings, we do not agree with defendants that any abuses which may have arisen therefrom warrant dismissal of defendants' indictments.
 
 
 12
 The only testimonial discrepancy of any significance occurred during grand jury proceedings leading to the first superseding indictment. In an effort to summarize his testimony from the original grand jury proceedings, Agent Nieves stated that "the cocaine was dropped on that location [between Cooper and Ginger Islands], as observed by agents of the British Virgin Islands Government." As was correctly stated before the original grand jury and as was again correctly testified to at trial, the cocaine drop itself was not actually observed by officials. Rather, officials simply observed a low-flying aircraft making several figure-eight flight patterns over the area in question.
 
 
 13
 The Court in Bank of Nova Scotia v. United States, 487 U.S. 250, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988), provided the applicable standard for determining when dismissal of an indictment is appropriate: "[A]s a general matter, a district court may not dismiss an indictment for errors in grand jury proceedings unless such errors prejudiced the defendants." Id. at 254, 108 S.Ct. at 2373. We do not find in the instant case that the erroneous testimony provided by Agent Nieves in obtaining the first superseding indictment in any way prejudiced the defendants. Thus the district court's refusal to dismiss the indictments did not constitute reversible error.
 
 
 14
 We base our finding of a lack of prejudice on the following factors. First, with respect to all defendants except Carpio-Velez, who was not charged until the first superseding indictment, the original untainted indictment provided the necessary probable cause for prosecution. Any erroneous superseding indictments were, therefore, merely negligible surplusage.
 
 
 15
 Second, with respect to Carpio-Velez, as well as the other defendants named in the original indictment, the fact that the defendants were convicted by a petit jury acts as a cure for any error which may have resulted during grand jury proceedings. See Latorre, 922 F.2d at 6-8. "An indictment returned by a legally constituted and unbiased grand jury, ... if valid on its face, is enough to call for trial of the charge on its merits." Costello v. United States, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956). "A court should not inquire into the sufficiency of the evidence before the indicting grand jury, because the grand jury proceeding is [merely] a preliminary phase ... and all constitutional protections [are] afforded at trial." United States v. Maceo, 873 F.2d 1, 3 (1st Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 125, 107 L.Ed.2d 86 (1989). Once a defendant has been convicted by a petit jury, "the petit jury's verdict of guilty beyond a reasonable doubt demonstrates a fortiori that there was probable cause to charge the defendants with the offenses for which they were convicted." United States v. Mechanik, 475 U.S. 66, 67, 106 S.Ct. 938, 940, 89 L.Ed.2d 50 (1986). At that point, our "review is limited to determining if the district court abused its discretion" in failing to dismiss the indictments. Maceo, 873 F.2d at 3. With regard to the instant case, on which an impartial petit jury reached a conclusion of guilt beyond a reasonable doubt, we cannot find that the district court in any way abused its discretion by refusing to dismiss the indictments.
 
 2. Sufficiency of the Evidence
 
 16
 This issue was raised specifically by defendant Bastian-Cortijo. Defendant Laboy-Delgado raised the issue specifically but failed to address it in his brief. We choose to review it anyway. Defendant Carpio-Velez did not raise the issue specifically in his brief; however, facts were brought forth during oral argument which nevertheless make it appropriate for us to review the issue now.
 
 
 17
 "In reviewing the sufficiency of the evidence, we must consider the evidence 'in the light most favorable to the government, drawing all legitimate inferences and resolving all credibility determinations in favor of the verdict.' " United States v. Benavente Gomez, 921 F.2d 378, 380 (1st Cir.1990) (quoting United States v. Angiulo, 897 F.2d 1169, 1197 (1st Cir.1990)). This court will uphold a jury verdict of guilty if "any reasonable juror 'after viewing the evidence in the light most favorable to the prosecution ... could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Walters, 904 F.2d 765, 770 (1st Cir.1990) (emphasis in original) (quoting United States v. Serrano, 870 F.2d 1, 5 (1st Cir.1989) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979))). This court will not assess the credibility of the witnesses. Serrano, 870 F.2d at 5.
 
 
 18
 A drug conspiracy may be proved by either direct or circumstantial evidence. United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). "It is not necessary that the government prove that the defendant ... knew the extent of the conspiracy." Walters, 904 F.2d at 771.
 
 
 19
 Defendant Bastian-Cortijo advances two main theories why this court should find that the government presented insufficient evidence against him. First, he argues that because the contents of the coolers were never analyzed and because possession and the amount of the cocaine were never proved at trial, there is insufficient evidence that a cocaine conspiracy ever took place. Second, he argues that if this court should find that a conspiracy did occur, the only direct evidence against him was the mere fact that he was present at the scene where some of the conspiratorial activities allegedly took place. This, he maintains, is insufficient to connect him with any conspiracy. Both arguments are without merit.
 
 
 20
 With respect to Bastian-Cortijo's first argument, it was not necessary for the cocaine to have been analyzed because proof based upon scientific analysis or expert testimony is not required to prove the illicit nature of a substance. Identification of a substance as a drug may be based upon the opinion of a knowledgeable lay person. United States v. Paiva, 892 F.2d 148, 156-57 (1st Cir.1989). Moreover, the fact that the cocaine was never introduced into evidence is irrelevant since the drug connection necessary for a conspiracy conviction may be proved by circumstantial evidence alone. United States v. Drougas, 748 F.2d 8, 15 (1st Cir.1984).
 
 
 21
 With respect to Bastian-Cortijo's second argument, the government did produce more than "mere presence" evidence. Most damaging to the defendant's case was the testimony that the defendant flew with Valencia-Lucena to Colombia and later threw the cocaine-filled coolers into British Virgin Islands waters. In addition, there was testimony that the defendant helped ready the original retrieval boats, that the defendant was present at a planning meeting held in Ocean Park, Puerto Rico, on December 29, 1988, and finally that the defendant was the one to deal with British customs officials in an attempt to secure the release of the drop plane after it landed in Virgin Gorda. In light of this substantial evidence against the defendant, this court cannot find that a reasonable jury could not have found Bastian-Cortijo guilty of the crimes charged beyond a reasonable doubt.
 
 
 22
 With regard to defendants Laboy-Delgado and Carpio-Velez, the evidence is more circumstantial; however, that presents no barrier to a finding of sufficiency of the evidence as participation in a conspiracy may be "inferred from a development and collocation of circumstances." United States v. Rivera-Santiago, 872 F.2d 1073, 1079 (1st Cir.1989).
 
 
 23
 In its case against Laboy-Delgado, the government presented evidence that the defendant travelled from Puerto Rico to Virgin Gorda on a boat with Llado-Ortiz, the leader of the conspiracy, at a time when the conspiracy was beginning to unravel. In addition, Laboy-Delgado was injured while attempting to repair the boat which was to be used in retrieving and transporting the cocaine. Finally, Laboy-Delgado demonstrated a consciousness of guilt by twice assuming a pseudonym. See United States v. Boyle, 675 F.2d 430, 432 (1st Cir.1982); United States v. Ballard, 423 F.2d 127, 133 (5th Cir.1970). Upon arrival at Virgin Gorda, Laboy-Delgado was introduced to informant Vazquez as "Danny." Then later, while en route to Puerto Rico for medical treatment, Laboy-Delgado instructed informant Vazquez that he could not give his correct name to United States customs officials. Vazquez subsequently whisked him through customs without stopping for the customary questioning, and, once safely through, took him to a medical center where he registered him under the name "David Fernandez."'
 
 
 24
 In its case against Carpio-Velez, the government presented evidence that the defendant was identified at the December 29, 1988, Ocean Park meeting as being the "owner" of the cocaine; that the defendant arrived in the British Virgin Islands shortly after the drop took place; and that, upon learning of the Stevens brothers' attempt to secure more money from the operation, the defendant stated that they "should call the Colombians because they don't put up with that shit and they cut people's heads off." In addition, the defendant was found in possession of a business card bearing the words "la ravisa," meaning electrical wiring, which was the part needed for the damaged boat.
 
 
 25
 We find that the cumulative effect of this evidence against Carpio-Velez and Laboy-Delgado was sufficient for a reasonable jury to find both defendants guilty beyond a reasonable doubt. We will not, therefore, disturb that finding on appeal.
 
 3. Jury Instructions
 
 26
 Defendant Carpio-Velez fully briefed this issue. Defendant Bastian-Cortijo raised the issue but did not address it in his brief. Nevertheless, we will review the issue with respect to both defendants. We rely on the argument as raised by Carpio-Velez.
 
 
 27
 It is undisputed that on day twelve of defendants' trial at least two jurors witnessed handcuffs being removed from the defendants in the corridor outside the courtroom. It was not known which of the jurors had been present. All defendants moved for immediate mistrial, which the district court denied. The prosecutor then suggested that the court advise the affected jurors not to discuss the incident with any unaffected jurors and not to take the incident into account in determining the defendants' guilt or innocence. Counsel for Valencia-Lucena, however, stated that, in the absence of a mistrial, nothing more should be done because it would "make an issue of the incident and make matters even worse." Counsel for the remaining defendants did not object. Nevertheless, on appeal, defendant Carpio-Velez charges that the court committed error by failing sua sponte to provide the jury with a limiting instruction.
 
 
 28
 In the absence of a trial request for a limiting instruction, our review is limited to plain error. Fed.R.Crim.P. 52(b); see also United States v. Williams, 809 F.2d 75, 84 (1st Cir.1986), cert. denied sub nom. United States v. Blandin, 481 U.S. 1030, 107 S.Ct. 1959, 95 L.Ed.2d 531 (1987), cert. denied sub nom. Tate v. United States, 481 U.S. 1072, 107 S.Ct. 2469, 95 L.Ed.2d 877 (1987), and cert. denied, 482 U.S. 906, 107 S.Ct. 2484, 96 L.Ed.2d 377 (1987). Carpio-Velez argues that plain error was committed in his case because the evidence was so weak that it is obvious the handcuffing incident was the deciding factor which swayed the jury against him, and presumably against Bastian-Cortijo as well. We find this argument to be without merit.
 
 
 29
 In the instant case, defense counsel affirmatively chose not to allow any curative instruction by the court. When defense counsel merely overlooks an important issue at trial, Rule 52(b) may be used when necessary to avoid a miscarriage of justice. Rule 52(b), however, should not be used to provide a second bite at the apple for a defendant whose deliberate trial strategy has failed.
 
 4. Brady Violations
 
 30
 In his brief, defendant Bastian-Cortijo raised the issue of Brady violations by stating that the government's failure to turn over evidence of confidential informant Vazquez' drug use along with its failure to test Vazquez for drug use while working on this case violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as well as the first, fifth and fourteenth amendments. Bastian-Cortijo, however, did not address the issue in any further detail. Nevertheless, the government chose to respond and we now review the issue.
 
 
 31
 We are in agreement with the government that the policy concerns behind Brady were met in this case. Brady is not a rule of pretrial discovery. United States v. Bagley, 473 U.S. 667, 675 n. 7, 105 S.Ct. 3375, 3380 n. 7, 87 L.Ed.2d 481 (1985). The purpose behind Brady is "not to displace the adversary system as the primary means by which truth is uncovered;" rather, its purpose is to prohibit the prosecution from intentionally withholding "evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial." Id. 473 U.S. at 675, 105 S.Ct. at 3380. In the instant case, the fact that the government failed to disclose to the defense before trial that Vazquez was a drug user in no way robbed the defendant of a fair trial because the issue was fully revealed at trial and extensively explored during cross-examination.
 
 5. Role in the Offense
 
 32
 Defendant Bastian-Cortijo's final argument on appeal is equally without merit. The defendant would have us overturn the district court's decision not to label him a "minimal" participant, and thereby reduce his base offense level by four, because, as he noted in his brief, unlike his co-conspirators he did not drive a boat, was not a mechanic, did not carry any money, and did not get injured while repairing a boat. This argument, however, completely ignores the evidence that was presented against him: (a) that he was involved in the initial planning of the operation, (b) that he helped ready the boats in Puerto Rico, (c) that he traveled with Valencia-Lucena in the plane to Colombia, (d) that he was responsible for throwing the drugs into British Virgin Islands waters, and (e) that he was the one who dealt with customs officials at the Virgin Gorda airport. We review a district court's decision whether to label a defendant a "minimal" or "minor" participant under the clearly erroneous standard. United States v. Wright, 873 F.2d 437, 444 (1st Cir.1989). Moreover, we do so keeping in mind the fact that regardless of a defendant's role in the crime, no defendant is automatically entitled to a reduction in offense levels. United States v. Paz Uribe, 891 F.2d 396, 399 (1st Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 2216, 109 L.Ed.2d 542 (1990).
 
 
 33
 With respect to the instant case, we cannot find any action on the part of the district court which rises to the level of clear error. The volume of evidence presented against the defendant clearly formed a sufficient basis for the district court's refusal to label Bastian-Cortijo a "minimal" participant.
 
 II. CROSS-APPEAL
 Facts
 
 34
 Initial reports from confidential informant Vazquez estimated the quantity of cocaine scheduled for importation by the conspirators to be between 200 and 250 kilograms. The original indictment charged defendants with (1) conspiring to import from Colombia into the United States approximately 200 kilograms of cocaine, and (2) conspiring to possess with intent to distribute 200 kilograms of cocaine. A first superseding indictment reduced the amount of cocaine involved to 173.2 kilograms, while a second superseding indictment reduced the amount even further to 137.2 kilograms, the amount actually recovered by the government.
 
 
 35
 At trial, the district court refused admission of evidence concerning the amount of cocaine involved in the conspiracy because the district court found that no sufficient chain of custody had been established between the cocaine reportedly dropped off the coast of Virgin Gorda and the cocaine eventually recovered by the government. Nevertheless, at sentencing, the district court accepted the amount of cocaine charged by the government in its second superseding indictment and set the base offense level at 36. The court then increased the total offense level of Llado-Ortiz to 40 for his role as leader of the conspiracy, increased the total offense level of Valencia-Lucena to 38 for his use of a special skill in piloting the aircraft, and reduced the total offense levels of Carpio-Velez, Bastian-Cortijo and Laboy-Delgado to 34 for their minor roles in the offense. Such offense levels would ordinarily have resulted in the following terms of imprisonment under the sentencing guidelines: 292-365 months for Llado-Ortiz, 235-293 months for Valencia-Lucena, and 151-181 months for Carpio-Velez, Bastian-Cortijo and Laboy-Delgado. The district court, however, elected to depart downwardly from these suggested guidelines ranges. The district court offered two reasons for doing so. First, the district court noted the government's failure to prove that the 137.2 kilograms of cocaine seized was the same cocaine the defendants conspired to import and thus determined that there was insufficient evidence of the actual amount of cocaine involved. Second, the court referred to the government's "false testimony" before the grand jury as reason for refusing to rely upon the quantities of cocaine advanced by the government. As a result, the terms of imprisonment actually imposed upon the defendants were 121 months for Llado-Ortiz and 120 months for each of the remaining four.
 
 Discussion
 
 36
 The government cross-appeals on the issue of the district court's decision to undertake a downward departure in sentencing the defendants, and we agree that error was committed below.
 
 
 37
 In reviewing a district court's decision to depart downwardly from suggested guidelines ranges, we are obliged to determine whether, as a matter of law, the departure was justified. United States v. Norflett, 922 F.2d 50, 52 (1st Cir.Dec. 28, 1990). In this respect, our review is plenary. United States v. Aguilar-Pena, 887 F.2d 347, 350 (1st Cir.1989).
 
 
 38
 For the following reasons, we find that the departures in the instant case were improper. First, under the sentencing guidelines, "departures can be condoned only where the circumstances pertaining to the offense or the offender are sufficiently unusual to remove a case from the heartland." United States v. Williams, 891 F.2d 962, 967 (1st Cir.1989) (emphasis added). A sentencing departure is not warranted in response to conduct of the government or of an independent third party. Thus it was error for the district court to base its downward departure upon a perceived need to reprimand the government for its conduct in investigating and prosecuting the case.
 
 
 39
 Second, the district court failed to determine the reliability of the evidence as to the quantity of cocaine which was used. While a district court may rely upon evidence at sentencing "without regard to its admissibility under the rules of evidence applicable at trial," United States Sentencing Commission, Guideline Manual, Sec. 6A1.3(a) (Nov.1990), before such evidence can properly be admitted, the court must first make an independent determination regarding its reliability. Id.; see also United States v. Zuleta-Alvarez, 922 F.2d 33, 36 (1st Cir.1990).
 
 
 40
 In the instant case, for purposes of determining the defendants' individual base offense levels, the district court accepted the government's contention as to the amount of cocaine, 137.2 kilograms. In determining that a downward departure was appropriate, however, the court expressly stated that it did not believe the government's contention that 137.2 kilograms were involved, which clearly indicates that the court was never convinced of the reliability of the government's evidence. The amount set by the government should not, therefore, have been adopted by the court in the first instance without having conducted an evidentiary hearing in order to reach a reliable determination as to the amount of cocaine. Zuleta-Alvarez, 922 F.2d at 36-37 (when facts relevant to sentencing are reasonably in dispute both parties may present evidence in support of their respective positions).
 
 CONCLUSION
 
 41
 Pursuant to our discussion above, we affirm the convictions but vacate and remand for purposes of resentencing.
 
 
 
 [1]
 Seven other individuals were indicted for the same offenses: Two were acquitted by the trial court at the close of the government's case, and five were acquitted by the jury. Two additional co-conspirators remain at large
 
 
 [2]
 It was labeled as such in a recorded telephone conversation between Llado-Ortiz and Vazquez