UNITED STATES of America, Appellee,

v.

Jose Juan LAMELA, Defendant,
Appellant.

UNITED STATES of America, Appellee,

v.

James David LAMELA, Defendant,
Appellant.

Nos. 90–1148, 90–1149.

United States Court of Appeals,
First Circuit.

Heard Jan. 7, 1991.

Decided Aug. 21, 1991.

Thomas M. Dawson, New York City, for
defendants, appellants.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez–Romo, U.S. Atty., and Warren Vazquez, Asst. U.S. Atty., Hato Rey, P.R., were on brief, for appellee.

Before CAMPBELL and CYR, Circuit Judges, and POLLAK,* Senior District Judge.

CYR, Circuit Judge.

Jose and James Lamela appeal their convictions on charges of importing into the United States, and possessing with intent to distribute, approximately 6800 grams of cocaine, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1). Appellants first challenge the denial of their motion to suppress the cocaine discovered in the course of warrantless searches of their persons. Second, appellants urge us to dismiss the indictment, in the exercise of our "supervisory power," as a means of deterring an alleged "pattern" of prosecutorial misconduct in recent cases brought by the Office of the United States Attorney for the District of Puerto Rico. We affirm their convictions.

I

BACKGROUND

Appellants were subjected to warrantless border searches by customs officials at Munoz Marin International Airport in San Juan, Puerto Rico, shortly after appellants arrived aboard a flight bound for Madrid, Spain, from Bogota, Colombia, with a scheduled stop in San Juan. Appellants disembarked shortly after their arrival in San Juan. Upon entering the in-transit terminal, Jose Lamela was stopped by United States Customs Officer Raul Diaz, who asked to see Jose's airline ticket. Jose produced his own ticket and a ticket issued to his brother, James, toward whom Jose pointed in the distance. When asked the purpose of his trip to Spain, Jose said he was travelling on business. But in response to Diaz' further request that Jose produce a business card, Jose said he was going to Spain to take up residence. Diaz observed that Jose appeared to be nervous,

was starting to perspire, and was "moving back and forth." By this time, both Officer Diaz and United States Customs Inspector Manuel Rosario had noticed that Jose was wearing baggy clothing, and that his midsection appeared bulky. The officers brought Jose to a more private area, either an adjacent room or an elevator, where another person was awaiting search. After Diaz patted down Jose's midsection and felt something bulky, Jose was told to remove his trousers, revealing a girdle containing several taped packets of cocaine.

Diaz and Rosario then began looking for James Lamela. Upon opening the door to a nearby rest room, the officers saw James throw something into a trash can. A search of the trash can revealed a raincoat in which the officers found more taped packets containing cocaine. The girdle under James' clothing was found to contain cocaine as well.

Appellants were indicted in due course. After the district court denied their motion to suppress the cocaine, 719 F.Supp. 68, appellants were tried and convicted. In denying appellants' motion for judgments of acquittal, the district court found that United States Drug Enforcement ("DEA") Agent Enrique Nieves had made intentional misrepresentations before the grand jury. The court nevertheless ruled that the Nieves misrepresentations did not taint the indictment.

II

DISCUSSION

A. *Border Searches*

The district court ruled that the warrantless searches at the San Juan airport were routine border searches which did not require "reasonable suspicion." The court alternatively concluded that the searches were valid even assuming "reasonable suspicion" was required. *See United States v. Braks*, 842 F.2d 509 (1st Cir.1988) (noting that probable cause is not required for border searches and requiring reasonable suspicion only if search is not routine). As

* Of the Eastern District of Pennsylvania, sitting    by designation.

we agree that there was "reasonable suspicion" to support the searches, we need not consider their routineness.

A district court order denying a motion to suppress is to be upheld " 'if any reasonable view of the evidence supports [it].' " *United States v. Young*, 877 F.2d 1099, 1100–01 (1st Cir.1989) (quoting *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985)). *See also United States v. Kiendra*, 663 F.2d 349, 351 (1st Cir.1981). Some years ago we adopted the requirement that the government, in order to substantiate " 'reasonable suspicion,' " must "demonstrate some objective, articulable facts that justify the intrusion as to the particular person and place searched." *United States v. Wardlaw*, 576 F.2d 932, 934 (1st Cir.1978) (quoting *United States v. Afanador*, 567 F.2d 1325, 1328 (5th Cir.1978)).

■ Prior to the pat-down search of Jose Lamela,[1] Officer Diaz and Inspector Rosario had learned that Jose: (1) was a passenger aboard an international flight originating in Colombia and bound for Spain; (2) was wearing baggy clothing suitable for the concealment of contraband; (3) appeared nervous and began to perspire upon being questioned; (4) gave inconsistent responses to routine questions relating to the purpose of his travel; and (5) had a conspicuous bulge around his midriff. These observations were more than sufficient to raise a "reasonable suspicion" in the mind of an experienced law enforcement agent. *See, e.g., United States v. Trullo*, 809 F.2d 108, 112 (1st Cir.), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987) (circumstances " 'to be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training' ") (quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976)); *United States v. McHugh*, 769 F.2d 860, 865 (1st Cir.1985) ("In assessing the import of the evidence, the expertise and experience of the law enforcement officers must also be taken into account"). Once the pat-down search disclosed the girdle around Jose's waist, there was "reasonable suspicion" to support the more intrusive requirement that Jose remove his trousers. *See Wardlaw*, 576 F.2d at 934 ("what constitutes 'reasonable suspicion' to justify a particular search may not suffice to justify a more intrusive or demeaning search.").[2]

■ As stated, Diaz and Rosario reconnoitered the terminal to locate Jose's travelling companion and brother, James, whose presence had become known to Officer Diaz when Jose tendered James' airplane ticket. The officers first observed James just as he was throwing something into a trash can in a public rest room. Their examination of the trash can disclosed a raincoat in which the officers found cocaine. The discovery of the cocaine in the raincoat, combined with the fact that James was travelling with Jose, whom the officers knew to be a drug smuggler, was more than enough to create the requisite "reasonable suspicion" for the pat-down search of James' person. The pat-down disclosed a girdle similar to that found on Jose, raising at least a "reasonable suspicion" sufficient to support the ensuing instruction that James remove his trousers to permit inspection of the suspected girdle.

---

1. Since the issue was not raised by the government, we simply assume, without deciding, that the girdle worn by each defendant was not in "plain view." *Cf. Harris v. United States*, 390 U.S. 234, 236, 88 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968) (objects falling within "the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence"). As concerns the search of the trash can, however, it seems apparent that appellant James Lamela has not demonstrated the requisite reasonable expectation of privacy entitling him to claim fourth amendment protection. *See, e.g., California v.* *Greenwood*, 486 U.S. 35, 40–41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988) (reasonable expectation of privacy lacking where garbage deposited " 'in an area particularly suited for public inspection,' " (quoting *United States v. Reichert-er*, 647 F.2d 397, 399 (3d Cir.1981)).

2. Although appellants point to record inconsistencies as to the precise location of the scene of the search, none of the possible scenes was such as to undermine the sufficiency of the government's demonstration of "reasonable suspicion."

The district court correctly denied the motion to suppress the cocaine seized in the course of the border searches.

### B. *Motion to Dismiss Indictment*

■ The district court construed appellants' oral motion for judgments of acquittal as a motion to dismiss the indictment.[3] Their rule 29 motion made no mention of the indictment, but sought to prevent submission of the case to the jury on the basis that there was insufficient evidence to convict, in light of Nieves' lies to the grand jury. On appeal, the parties simply assume that the rule 29 motion, chameleonlike, became a motion to dismiss the indictment. We in turn feel constrained at least to advert to any colorable aspect of the motion.[4]

DEA Agent Nieves, the case agent, was the only witness who testified before the grand jury. Although the district court found that Nieves gave untruthful grand jury testimony,[5] appellants concede, as the district court itself determined, that any misconduct before the grand jury in no way prejudiced their rights. Appellants nonetheless urge us to dismiss the indictment, in the exercise of our supervisory power, as a means of deterring what is alleged to be a continuing "pattern" of prosecutorial misconduct by the Office of the United States Attorney for the District of Puerto Rico.[6] Whether or not there was

---

3. Apparently, appellants jointly submitted an oral motion for *judgments of acquittal* at the close of all the evidence. *See* Fed.R.Crim.P. 29. Their motion charged that Nieves lied before the grand jury, thus somehow rendering the evidence presented at trial insufficient to sustain the jury verdicts. The district court, however, treated their rule 29 motion for judgments of acquittal as a motion to dismiss the indictment. *But cf.* Fed.R.Crim.P. 12(b)(2) ("The following must be raised prior to trial ... (2) Defenses ... based on defects in the indictment ...") Thus, the district court did not discuss or determine the sufficiency of the evidence to sustain the verdicts.

4. Their rule 29 motion, as such, was meritless, which may well explain the district court's decision to treat it as a motion to dismiss the indictment. At trial, appellants had sought to exploit gaps and inconsistencies in the testimony offered by various government witnesses, giving rise to credibility issues for the jury. Appellants' counsel vigorously cross-examined Nieves concerning his use of the pronoun "we" before the grand jury, as well as other alleged inconsistencies in Nieves' grand jury testimony. *See infra* note 8. Thus, the verdicts readily withstand any challenge to the sufficiency of the supporting evidence. *United States v. Batista-Polanco,* 927 F.2d 14, 17 (1st Cir.1991) (proper inquiry on review of denial of motion for judgment of acquittal is whether evidence as a whole, viewed most favorably to the verdict, and resolving all credibility issues in favor of the verdict, could sustain rational jury's conclusion of guilt beyond a reasonable doubt).

Moreover, the return of the jury verdicts effectively deprived appellants' motion of significant force in its alternative guise as a motion to dismiss the indictment. The jury verdicts served to insulate appellants from the harm of any significant taint (and none is claimed) which might have resulted from Nieves' grand jury testimony. *See United States v. Valencia-*

*Lucena,* 925 F.2d 506, 511 (1st Cir.1991) (petit jury verdict "acts as a cure for any error which may have resulted during grand jury proceedings"); *United States v. Mechanik,* 475 U.S. 66, 67, 106 S.Ct. 938, 940, 89 L.Ed.2d 50 (1986) ("the petit jury's verdict of guilty beyond a reasonable doubt demonstrates *a fortiori* that there was probable cause to charge the defendants with the offenses for which they were convicted").

5. The district court found that Nieves intentionally misled the grand jury by using the pronoun "we" to describe certain investigative events in connection with the border searches and the arrests by officers Diaz and Rosario. The district court apparently concluded that Nieves had attempted to mislead the grand jury into believing that he was directly involved in making the arrests. The district court stated: "I do not believe [Nieves'] excuse that by 'we' he meant the government." Nieves was not present when appellants were searched or arrested. As the case agent, Nieves was contacted by the officers at the scene, shortly after appellants had been arrested.

Since Nieves lacked personal knowledge of these investigative events, his testimony may have been hearsay. The Federal Rules of Evidence do not apply to grand jury proceedings, Fed.R.Evid. 1101(d)(2), and hearsay evidence may be presented in support of an indictment, *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (upholding conviction under indictment based exclusively on hearsay). Indeed, apparently it is common practice in the District of Puerto Rico, as elsewhere, for the government to present an overview of the criminal investigation through the testimony of the case agent, rather than through the testimony of the investigating officers.

6. Appellants point to four instances of alleged prosecutorial misconduct in the District of Puerto Rico. First, they correctly note that the dis-

a preexisting "pattern" of prosecutorial misconduct is immaterial to the merits of the motion to dismiss, however, absent some demonstration that there was prosecutorial misconduct in the present case.

■ At the outset, appellants' attempt to obtain dismissal of the indictment encounters a procedural obstacle. Normally, defenses and objections predicated on defects in the indictment are waived unless raised prior to trial. Fed.R.Crim.P. 12(b)(2). *See, e.g., United States v. Rodriguez,* 858 F.2d 809, 816 (1st Cir.1988); *United States v. Serino,* 835 F.2d 924, 929–30 (1st Cir.1987); *United States v. Murphy,* 762 F.2d 1151, 1155 (1st Cir.1985). Nevertheless, "because grand jury materials are frequently not made available to the defense until after the commencement of trial, we will allow review of the issue on its merits" in the present circumstances. *United States v. Valencia–Lucena,* 925 F.2d 506, 511 (1st Cir.1991); *United States v. Latorre,* 922 F.2d 1, 6 (1st Cir.1990).

■ The motion to dismiss fails on its merits, however, as a careful review of the grand jury transcript conclusively demonstrates that Nieves' use of the pronoun "we" could not have misled the grand jury. Accordingly, appellants cannot demonstrate that a "pattern" of prosecutorial misconduct infected these grand jury proceedings.

The grand jury transcript, extensively utilized by defense counsel during the cross-examination of Nieves at trial, demonstrates that the grand jury was forthrightly informed as to Nieves' role in the investigation. At the outset of the grand jury proceedings, the prosecutor invited Nieves to "tell the members of the Grand Jury the details of your investigation up to now?" Nieves responded: "I received a call from the Customs inspectors at the airport, ... indicating that they had arrested two persons." Later, the prosecutor inquired: "All the information that you have been providing to the members of the Grand Jury is because you either interviewed the Customs inspectors or get [sic] acquainted with all the information that they are going to place in their reports; is that correct?" Nieves responded: "That is correct."

We cannot conclude that Nieves' testimony bears the interpretation urged by appellants. Rather, at the instance of the prosecutor, Nieves informed the grand jury that (1) he had not been present at the time of the arrests, and (2) *all* the information that he was presenting to the grand jury had been obtained by him either from the customs officers or from other sources. We conclude, therefore, that the grand jury could not have been misled by Nieves' testimony, which formed the only predicate for appellants' contention that a "pattern" of prosecutorial misconduct was in any way material to their prosecution.[7]

trict court concluded that DEA Agent Nieves intentionally misrepresented to the grand jury that he was directly involved in certain investigative events surrounding appellants' arrests. Second, appellants cite to *United States v. Valencia–Lucena,* 925 F.2d 506 (1st Cir.1991), a recent case in which we affirmed the district court's denial of a motion to dismiss grand jury indictments. In *Valencia–Lucena,* four defendants were indicted on the basis of grand jury evidence which involved no testimonial discrepancies. The district court found that Nieves had made a material misstatement before the grand jury which returned a *superseding* indictment against a fifth defendant. We found it unnecessary to determine whether the misstatement amounted to "prosecutorial misconduct," because it did not prejudice the defendant and, therefore, did not constitute reversible error. *Id.* at 511. Third, appellants point to *United States v. Martinez,* 710 F.Supp. 415, 418 (D.P.R.1989), in which the district court dis-

missed an indictment prior to trial, expressing grave doubt as to whether misconduct before the grand jury had influenced the grand jury's decision to indict. As their fourth instance of alleged misconduct, appellants merely point to the following language from the *Martinez* opinion: "This is the *second* time that the [District] Court has in the past two months found that members of the U.S. Attorney's office of this District have engaged in misconduct before the grand jury." *Id.*

7. As appellants have demonstrated no prosecutorial misconduct in the present case, it is unnecessary to discuss whether, as appellants contend, our "responsibility *to supervise the* government's use of its prosecutorial powers," *United States v. Vest,* 842 F.2d 1319, 1334 (1st Cir.1988) (emphasis added), might entail the dismissal of an indictment in order to deter prosecutorial misconduct which results in no

Our determination that any preexisting pattern of prosecutorial misconduct did not extend to the present case should by no account be confused with acquiescence to any improper grand jury practices by the Office of the United States Attorney for the District of Puerto Rico as recounted in earlier decisions of this court or of the district court. The practice of presenting the grand jury testimony of the case agent, rather than the testimony of the individual investigating officers, in no way diminishes the duty of the case agent to obtain complete and accurate information before presenting hearsay testimony to the grand jury. There are enough evidentiary inconsistencies indicated by the present record to demonstrate too casual a regard for the testimonial precision required in these proceedings.[8] Although the parties agree that the outcome of the proceedings was not materially affected, the presentation of inaccurate testimony by prosecution witnesses, especially misstatements by experienced government agents whose duty it is to exercise especial care in such matters, disserves the prosecutorial function, which demands fastidious respect for accuracy in accusatory proceedings before the grand jury, no less than at trial. We encourage the district court to continue its vigilance and to subject to careful scrutiny any further instance of suspect grand jury testimony.

*The judgments of the district court are affirmed.*

---

prejudice to the defendant. *But see Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988) ("a federal court may not invoke supervisory power to circumvent the harmless error inquiry prescribed by Federal Rule of Criminal Procedure 52(a)"). *Mechanik,* 475 U.S. at 71–72, 106 S.Ct. at 942–943 (applying rule 52(a) harmless error test to misconduct before grand jury).

8. For instance, during the cross-examination of DEA Agent Nieves, defense counsel focused, *inter alia,* on apparent discrepancies concerning: the number of packets of cocaine found on James Lamela; when Diaz asked to see Jose's airline ticket; whether James "threw" "a jacket," "a trenchcoat," or "packages" into the trash can; and when and where James was searched.