998 F.2d 1001
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES OF AMERICA, Appellee,
v.
Jose ALGARIN-ROSA, Defendant, Appellant.
UNITED STATES OF AMERICA, Appellee,
v.
Eduardo GONZALEZ-RODRIGUEZ, Defendant, Appellant.
 Nos. 92-2367, 93-1006.
 United States Court of Appeals,
First Circuit.
 July 12, 1993
 
 Appeals from the United States District Court for the District of Puerto Rico
 Jose C. Romo Matienzo for appellant Gonzalez-Rodriguez.
 Carlos Vazquez-Alvarez for appellant Algarin-Rosa.
 Esther Castro Schmidt, Assistant United States Attorney, with whom Daniel F. Lopez Romo, United States Attorney, and Jose A. Quiles-Espinosa, Senior Litigation Counsel, were on brief for appellee.
 D. Puerto Rico
 AFFIRMED.
 Before Torruella, Oakes* and Cyr, Circuit Judges.
 Cyr, Circuit Judge.
 
 
 1
 Appellants challenge their convictions, under 21 U.S.C. § 841(a)(1), for aiding and abetting the distribution of 997.3 grams of cocaine. We affirm.
 
 
 2
 * BACKGROUND
 
 
 3
 We review the evidence in the light most favorable to the prosecution with a view to whether a rational jury could have found the defendants guilty beyond a reasonable doubt. United States v. Cruz, 981 F.2d 613, 615 (1st Cir. 1992); United States v. Tejeda, 974 F.2d 210, 212 (1st Cir. 1992); United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 (1993). Around April 6, 1992, a confidential informant received a tip that cocaine could be purchased at "Los Companeros," an auto body repair shop operated by two brothers, Eduardo Gonzalez Rodriguez ("Eduardo") and Luis Gonzalez ("Luis"). The informant went to the shop, accompanied by one Harry Burgos, and there encountered Jose Algarin Rosa ("Algarin"), apparently an employee. The informant asked Algarin about the possibility of purchasing a half kilogram of cocaine. Algarin told the informant that in order to purchase this amount, the informant would need to talk to Luis.
 
 
 4
 As the informant was leaving the shop, Luis arrived, accompanied by Eduardo. Algarin made introductions. With Algarin and Eduardo present, the informant again asked to purchase a half kilogram of cocaine. Luis consulted with Eduardo and offered to sell one-eighth of a kilogram of cocaine for $3000; the informant declined the offer. Luis then indicated that a large shipment was due from Vieques, Puerto Rico, and that when the shipment arrived he could sell the informant a full kilogram for $16,000. The informant tentatively assented.
 
 
 5
 On April 13, 1992, the informant met again with Luis, who stated that he had received the shipment from Vieques and was ready to complete the kilogram deal. The informant gave Luis his beeper number and left, ostensibly to get the purchase money. Around 3:00 p.m., the informant returned to the repair shop, accompanied by Ruben Diaz Padro ("Diaz"), a federal undercover agent. Luis and Algarin were both present. Before the transaction could be consummated, however, Eduardo entered and warned Luis that there were police nearby. Luis thereupon arranged to meet the informant on a nearby road. Accompanied by Diaz, the informant drove to the site of the proposed rendezvous, and parked as instructed. A few minutes later, the informant and Diaz observed Eduardo drive by in a wine-colored BMW automobile. After several passes, Eduardo pulled over and parked in front of the informant's automobile. Luis pulled in behind. Using hand signals, Luis attempted to lead the informant to a third site, with Eduardo following in his own car. Because the informant was uncomfortable with this change in plans, he declined to follow, and drove away.
 
 
 6
 Later that afternoon, Luis called the informant's beeper number and agreed to complete their kilogram transaction at the repair shop. Eduardo greeted the informant on arrival and instructed him not to park in front of the shop. As the informant and Diaz made their way into the office, Algarin reassured the informant of Luis's honesty: "Do not be afraid, they do not deal with tricks." Eduardo, who was leaving the office as the informant met with Luis, advised Luis on how to remove the cocaine from its bag: "That is not the way that it is done. Don't take it out like that." Shortly thereafter, at the informant's signal, federal agents raided the repair shop. Luis was arrested in the office. Algarin attempted to run away, but was arrested after a scuffle with DEA agents at the shop gate. Eduardo was arrested on the street nearby. All were indicted for aiding and abetting the distribution of cocaine.
 
 
 7
 The defendants were joined for trial, over Eduardo's objection. On May 4, 1992, the defense filed an omnibus discovery motion, seeking, inter alia, "all information which may be used for impeachment of government witnesses." The government disclosed that an administrative fine had been imposed on the informant for marijuana possession in New York. The government disclaimed knowledge of any other impeachment material relating to the informant.
 
 
 8
 Ultimately, Luis entered a guilty plea; Eduardo and Algarin went to trial. In an effort to discredit the informant's testimony, the defense called Esteban Garcia Rosario ("Garcia"), a former acquaintance of the informant, who testified that the informant had used and dealt drugs in the past. To rebut Garcia's testimony, the prosecution recalled the informant. The informant admitted knowing Garcia and, later, on cross-examination, admitted that he had once purchased drugs from Garcia "for a friend." Both defendants asserted that the government should have disclosed this information prior to trial, relying on Brady v. Maryland, 373 U.S. 83 (1963), and moved for judgments of acquittal under Fed. R. Crim. P. 29. The court denied their motion.
 
 
 9
 In the course of his redirect examination by the government, the informant was asked whether he "had any personal knowledge if [Garcia] was acquainted with Eduardo Gonzalez or Luis Gonzalez and Algarin." The informant responded in Spanish: "as to Algarin I don't know, but I do know that he [Garcia] bought one eighth [kilogram] of cocaine from ... Eduardo Gonzalez." Before the answer could be translated into English, both defendants moved for mistrial, invoking the rule on "other acts" evidence. See Fed. R. Evid. 404(b). Reserving its ruling on the mistrial motion, the district court gave the government an opportunity to show that the informant's statement was based on personal knowledge of Garcia's prior drug sources under Evidence Rule 602. Eventually, the informant was permitted to testify: "I used to visit him [Garcia] at his house and I know that he was buying from Luis and Eduardo." A few hours later, as part of its jury charge, the court delivered a curative instruction proposed by defendants:
 
 
 10
 "I instruct you, ladies and gentlemen of the jury, that the defendants are on trial solely and exclusively on the charge set forth in the indictment and nothing else. So therefore I instruct you that you should disregard, that is, get out of your mind completely, [the informant's] testimony concerning [Garcia's] prior dealings with the defendant. It has nothing to do with this case and it is irrelevant and you should not consider it at all for any purpose whatsoever in your deliberation...."
 
 
 11
 Algarin and Eduardo were both convicted.
 
 II
 DISCUSSION
 
 12
 Appellants' first contention is that the district court erred in denying their motion for mistrial based on the informant's testimony that Garcia had purchased "one eighth [kilogram] of cocaine from ... Eduardo Gonzalez." Assuming, for present purposes, that the informant's statement was inadmissible against appellants,[1] we review for "abuse of discretion" the district court's election to give a cautionary instruction, rather than declare a mistrial, to counteract any prejudicial effect which may have resulted from the challenged testimony. See, e.g., United States v. Bello-Perez, 977 F.2d 664, 672 (1st Cir. 1992); United States v. Sclamo, 578 F.2d 888, 890-91 (1st Cir. 1978).
 
 
 13
 There was no abuse of discretion. Even assuming, for purposes of discussion, that some improper prejudice may have resulted from the informant's testimony, the degree of any such prejudice, assessed from the vantage point of a "cold appellate record," see Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988), was plainly insufficient to warrant second-guessing the trial court's judgment that its jury instruction was adequate cure for any possible unfair prejudice. Moreover, although appellants now fault the district court's failure to give a contemporaneous instruction, there is no indication in the appellate record that one was requested. See United States v. Valencia-Lucena, 925 F.2d 506, 513-14 (1st Cir. 1991) (review "limited to plain error" where defendant eschewed request for limiting instruction upon trial court's denial of mistrial motion). Rather, the court permitted the defense to draft a curative instruction which was included in the jury charge delivered a few hours later. "We normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions." Greer v. Miller, 483 U.S. 756, 766 n.8 (1987) (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)). Whether or not the brief interval between the subject testimony and the curative instruction was the product of a tactical choice on the part of the defense, it did not amount to "plain error."
 
 
 14
 Appellants contend that the government's failure to disclose the informant's prior dealings with Garcia, in response to a discovery request from the defense for "all information which may be used for impeachment of government witnesses," constituted a Brady violation. Once again we assume, for purposes of discussion, that Garcia's testimony relating to the informant's prior cocaine dealings was potentially exculpatory, and we accept the government's concession that it was material, in the sense that its disclosure would "create a reasonable probability ... that the result of the proceeding would be different." United States v. Bagley, 473 U.S. 667, 682 (opinion of Blackmun, J.) (1985); United States v. Osorio, 929 F.2d 753, 758 (1st Cir. 1990). In order to warrant reversal, however, a delayed disclosure of material evidence must be shown to have "prevented [the defense] from using the disclosed material effectively in preparing and presenting the defendant's case." United States v. Ingraldi, 793 F.2d 408, 411-12 (1st Cir. 1986); United States v. Devin, 918 F.2d 280, 289-90 (1st Cir. 1990); United States v. Osorio, 929 F.2d 753, 757 (1st Cir. 1991). In the present case, the defense was well aware of the informant's prior cocaine dealings with Garcia prior to trial. Indeed, Garcia was called as a witness by the defense, for the very purpose of testifying to these matters.[2] Accordingly, there was no showing that prejudice resulted from the delayed disclosure. See Valencia-Lucena, 925 F.2d at 514 ("[T]he fact that the government failed to disclose to the defense before trial that [its informant] was a drug user in no way robbed the defendant of a fair trial because the issue was fully revealed at trial and extensively explored during cross-examination").
 
 
 15
 Finally, appellants challenge the sufficiency of the evidence, claiming that they were "merely present" at the scene of Luis's drug dealing activities, and reminding us that evidence of "mere presence" is insufficient to support their convictions. See Ortiz, 966 F.2d at 707 (1st Cir. 1992); United States v. Francomano, 554 F.2d 483, 486 (1st Cir. 1977). We evaluate their claim under well-established standards. Although "neither mere association with the principal nor mere presence at the scene of the crime ... is sufficient to establish aiding and abetting....," United States v. Alvarez, 987 F.2d 77, 83 (1st Cir. 1993); United States v. Aponte-Suarez, 905 F.2d 483, 491 (1st Cir.), cert. denied, 498 U.S. 990 (1990) and cert. denied, 498 U.S. 1092 (1991), a defendant's presence at the scene of a criminal transaction is sufficient to support a conviction for "aiding and abetting" if it is accompanied by additional indicia of participation in or association with the criminal venture. See id. (citing United States v. Rodriguez Cortes, 949 F.2d 532, 539 (1st Cir. 1991)); see also United States v. Echeverri, 982 F.2d 675, 678 (1st Cir. 1993) ("culpability of a defendant's presence hinges upon whether the circumstances fairly imply participatory involvement"). Here, in addition to his presence at the repair shop, the government offered evidence that Eduardo (1) consulted with Luis on April 6, as to the price and quantity of the cocaine offered to the informant; (2) watched for, and warned Luis about, police presence in the area of the repair shop on April 13; (3) accompanied Luis in a separate car to the site of the aborted first transaction; (4) told the agents where to park their car when they arrived to consummate the transaction; and (5) evinced familiarity with (and some measure of responsibility for) the cocaine transaction, just prior to the DEA raid, by telling Luis how to handle the cocaine. In addition to Algarin's "mere presence" at the repair shop, the government presented evidence that Algarin (1) introduced the informant to Luis, after learning that the informant sought to purchase a large quantity of cocaine; (2) stood next to Luis during negotiations with the informant on April 6; (3) evinced familiarity with Luis's business practices, and sought to offer reassurance to the informant and undercover agent ("don't be afraid, they don't do tricks here"), when the informant arrived to consummate the drug deal; and, finally, (4) ran from the shop, scuffling with a DEA agent at the gate, when the raid began. Cf. United States v. Hernandez, No. 91-2034/5/6, slip op. at 18 (1st Cir. May 12, 1993) (upholding conviction where defendant apparently knew that an illegal drug transaction was about to occur, lingered inexplicably at apparent vantage point outside apartment, and attempted to flee during DEA raid); United States v. Martinez, 479 F.2d 824, 829 (1st Cir. 1973) ("presence itself implies participation [where] ... a companion stands by during a [crime], ready to sound a warning or give other aid if required."). Finally, as to both defendants, we recognize that "criminals rarely welcome innocent persons as witnesses to serious crimes," Hernandez, slip op. at 17 (quoting Ortiz, 966 F.2d at 712), and that Luis's apparent willingness to consummate the transaction in Eduardo's and Algarin's presence provides some corroboration of the jury's ultimate conclusion as to their culpability. United States v. Batista-Polanco, 927 F.2d 14, 18 (1st Cir. 1991). Arguably, then, even if the evidence of appellants' participatory presence was somewhat thin, particularly in Algarin's case, it was nonetheless legally sufficient to support their convictions.
 
 
 16
 Affirmed.
 
 
 
 *Of the Second Circuit, sitting by designation.
 
 
 [1]
 Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b)
 
 
 [2]
 During cross-examination, Garcia stated: "sometime back, Eduardo went to my house .... and he told me about his problem. And, well since I knew [the informant] from sometime ago and I knew about his past, I decided that if it was necessary for me to come to testify here in court, to give my testimony in front of the Court, I would do so and here I am."