USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 98-2330

 UNITED STATES,

 Appellee,

 v.

 ROBERT J. ROWE,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Robert E. Keeton, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 Cyr, Senior Circuit Judge,
 and Stahl, Circuit Judge.
 
 
 
 
 Stephen Hrones, with whom Hrones & Garrity, was on brief for
appellant.
 Mark J. Balthazard, Assistant United States Attorney, with
whom Donald K. Stern, United States Attorney, was on brief for
appellee.

January 27, 2000

 
 

 STAHL, Circuit Judge. Robert Rowe was convicted on two
counts of bankruptcy fraud in violation of 18 U.S.C. 152. We
overturned his conviction on one of the two counts and remanded for
resentencing. See United States v. Rowe, 144 F.3d 15 (1st Cir.
1998) ("Rowe I"). Now that resentencing has taken place, Rowe
again appeals. For the reasons stated below, we reverse and
remand for resentencing.
 I.
 Background
 The facts of this case are not in serious dispute. Our
opinion in Rowe I sets forth the relevant details:
 In September 1992, Rowe filed a
 personal bankruptcy petition under chapter 7
 of the Bankruptcy Code. Doing so obligated
 him to file with the bankruptcy court a number
 of bankruptcy schedules that are designed to
 profile a chapter 7 petitioner's financial
 situation. In Schedule A, which directs the
 petitioner to list all interests in "REAL
 PROPERTY," Rowe typed "NONE" in the column
 where he was asked to provide a "Description
 and Location of Property." In Schedule J,
 which is labeled "CURRENT EXPENDITURES OF
 INDIVIDUAL DEBTOR(S)," Rowe typed "$395.00" in
 the space [in which] he was to list his "Rent
 or home mortgage payment." These two
 responses were the subjects of the bankruptcy
 frauds charged in Counts II and III of the
 indictment.

 The government's theory as to Count II
 was straightforward: the answer "NONE" in
 Schedule A was fraudulent because, at the time
 Rowe filed his petition, he and his ex-wife
 each had a 50 percent ownership interest in a
 residence located at 20 Highland Avenue in
 Nahant, Massachusetts. The government's
 theory as to Count III [was] a bit more
 complicated . . . but can be summarized as
 follows: the answer "$395.00" in Schedule J
 was fraudulent because, at the time Rowe filed
 his petition, EDI [a company that he and his
 brother had created] was paying upwards of
 $1800 per month in rent for Rowe to live in a
 house he personally had leased. This house
 was located at 47 Castle Road in Nahant,
 Massachusetts. In the government's view, Rowe
 had a clear obligation to disclose this rent
 payment on his Schedule J, but failed to
 disclose it in order to [conceal his interest
 in EDI from the bankruptcy court -- an act
 which was itself the subject of Count I of the
 indictment].
 
Id. at 16-17. After an eleven-day trial, a jury acquitted Rowe on
Count I, but found him guilty on Counts II and III. Rowe appealed,
and although we affirmed his conviction on Count II, we reversed
his conviction on Count III, vacated his sentence, and remanded for
further proceedings. See id. at 24.
 Before resentencing could take place, the U.S. Attorney's
Office filed an ethical complaint against Rowe's attorney with the
Massachusetts Board of Bar Overseers ("BBO") stating that Rowe's
attorney had committed misconduct by making baseless allegations
that the government's case agent had lied to the grand jury and
that the prosecution had suborned the use of this perjured
testimony. At counsel's request, the district court continued
Rowe's resentencing while his attorney responded to the BBO
complaint. Shortly thereafter, the BBO dismissed the complaint.
 In the district court, Rowe's attorney renewed his
allegations of perjury and argued that the government's pursuit of
an ethical complaint against him was retaliatory. He moved for an
evidentiary hearing to explore these issues, arguing that proof of
government misconduct would entitle his client to a downward
departure at sentencing. The district court denied the motion,
finding that Rowe's unsupported allegations of perjury were too
conclusory to justify further consideration.
 Thereafter, on November 12, 1998, the court sentenced
Rowe to eighteen months of imprisonment, twenty-four months of
supervised release with a $50 special assessment and a fine of
$10,000. Under the United States Sentencing Guidelines ("the
Guidelines"), the court's sentence reflected a base offense level
of six, see U.S.S.G. 2F1.1(a) (Nov. 1995), a four level
enhancement for an intended loss of more than $20,000, see id. 
2F1.1(b)(1)(E), a two level enhancement for the violation of a
judicial order or process, see id. 2F1.1(b)(3)(B), and a two
level enhancement for obstruction of justice, see U.S.S.G. 3C1.1
(Nov. 1995). 
 II.
 We review the district court's refusal to hold an
evidentiary hearing on the misconduct claim on an abuse of
discretion standard. See United States v. Grant, 114 F.3d 323, 326
(1st Cir. 1997).
 In the past, we have indicated that "a downward departure
could not be employed as a means of reprimanding the government for
the 'false testimony' of a government agent before a grand jury." 
United States v. Connell, 960 F.2d 191, 196 n.8 (1st Cir. 1992)
(quoting United States v. Valencia-Lucena, 925 F.2d 506, 515 (1st
Cir. 1991)). Even so, we have recognized that other kinds of
governmental misconduct could be the basis for a downward departure
at sentencing. See United States v. Montoya, 62 F.3d 1, 3-4 (1st
Cir. 1995) ("[W]here government agents have improperly enlarged the
scope or scale of the crime, the sentencing court 'has ample power
to deal with the situation either by excluding the tainted
transaction from the computation of relevant conduct or by
departing from the [guideline sentencing range].'" (quoting
Connell, 960 F.2d at 196)). Since then, the Supreme Court has
suggested that downward departures are broadly available when
unusual circumstances distinguish a case from the heartland of the
Guidelines. See Koon v. United States, 518 U.S. 81, 94 (1996). We
have yet to revisit this issue in Koon's wake.
 But here, we need not decide whether Connell and
Valencia-Lucena remain good law. Even if a downward departure
could redress the use of perjured grand jury testimony by a
government agent, Rowe's conclusory allegations in this regard did
not require an evidentiary hearing. FBI agent Richard Egan
provided grand jury testimony that Rowe had transferred his house
to his ex-wife after learning that his activities were the subject
of a government investigation. Egan admitted at trial that this
testimony was in error and that Rowe had in fact retained an
ownership interest in the house all along. Egan explained that his
grand jury testimony was simply mistaken, based on erroneous
information that he had received from Rowe's previous attorney. 
Rowe failed to rebut this explanation, and absent any meaningful
evidence that Egan knowingly misled the grand jury, there was no
reason to believe that he had lied or that the prosecution had
suborned the use of perjury.
 Against this background, the U.S. Attorney's decision to
file an ethical complaint against Rowe's attorney cannot be viewed
as improper because although the BBO eventually dismissed that
complaint, the government had at least a threshold basis for
believing that Rowe's allegations of perjury had been made in bad
faith. With these facts in mind, the district court properly
concluded that Rowe's claim of government misconduct was belied by
the record and simply was too conclusory to warrant further
consideration. See United States v. Lilly, 983 F.2d 300, 310 (1st
Cir. 1992) (noting that a criminal defendant is not entitled to an
evidentiary hearing on a motion unless he can make an "adequate
threshold showing that material facts are in genuine doubt or
dispute"); see also United States v. McGill, 11 F.3d 223, 225 (1st
Cir. 1993) ("[E]videntiary hearings on motions are the exception,
not the rule. . . . [A] party seeking an evidentiary hearing must
carry a fairly heavy burden of demonstrating a need for special
treatment." (internal citations omitted)).
 III.
 We now consider Rowe's claim that the district court
erred in arriving at his sentence. "We first determine the
applicability of [each] guideline to a particular case de novo. 
After determining the guideline's scope and meaning, we review the
district court's factual determinations for clear error, giv[ing]
due deference to the district court's application of the guidelines
to the facts." United States v. Cali, 87 F.3d 571, 575 (1st Cir.
1996) (internal quotation marks and citations omitted).
 A.
 The district court increased Rowe's base offense level by
four to reflect the intended loss from his criminal conduct. See
U.S.S.G. 2F1.1(b)(1)(E) (Nov. 1995). In so doing, the court
found that Rowe had concealed his interest in the house from the
bankruptcy court, that the intended loss from Rowe's actions
amounted to the value of his interest in the house, and that
although outstanding loans and attachments on the house made the
value of his interest unclear, a willing buyer and seller would
have valued the property at more than $20,000. Under the
Guidelines, the court's valuation required a four-point increase in
Rowe's base offense level. See id.
 We would have little difficulty accepting the district
court's methodology if it represented a reasonable means of
ascertaining Rowe's intended loss. Because criminal conduct can
cause an indeterminate amount of harm, the loss in a particular
case "need not be determined with precision." U.S.S.G. 2F1.1
app. note 8 (Nov. 1995). A sentencing court "need only make a
reasonable estimate of the loss" in light of the information at
hand. Id. "Courts can, and frequently do, deal with rough
estimates," and as such, "a party dissatisfied with [a] sentencing
court's quantification of the amount of loss . . . must go a long
way to demonstrate" clear error. United States v. Rostoff, 53 F.3d
398, 407 (1st Cir. 1995).
 But even with this deferential standard in mind, the
district court's determination of the loss in this case must be
reversed. Rowe was found guilty of committing bankruptcy fraud by
submitting bankruptcy schedules that failed to disclose his
interest in the residence. The value of his interest, if any, was
unclear because although the house if unencumbered was worth
between $130,000 and $140,000, two mortgages and a number of
attachments appear to have encumbered the property at the time Rowe
submitted his fraudulent bankruptcy schedules.
 If the amount of these encumbrances was completely
unknown, then the district court properly could have resorted to a
hypothetical estimate of how a willing buyer and seller would have
valued Rowe's interest in the house. Here, however, there was
substantial evidence about the size of the encumbrances. The first
mortgage on the property apparently had a balance of $10,500, while
the second mortgage allegedly had a balance of $50,000. Moreover,
Government Exhibits 10A, 10B, 10C, 10D, 11A, and 11B indicated that
there were several attachments on the property, one of which was
for $600,000. These obligations arguably rendered Rowe's interest
in the property worthless.
 Rather than sorting through this evidence to ascertain
the value of the harm that Rowe either caused or intended, the
district court stated that "[t]he thing that's missing is no
showing in evidence . . . by the Government or by the defendant as
to what [he] did owe on the original or other loans at the date
that is relevant to the loss calculation." The court could have
conducted an evidentiary hearing to resolve this difficulty, but it
did not. Instead, it estimated Rowe's interest in the property to
be worth $20,000 -- an amount that was inconsistent with the record
and had no discernible connection to the amounts that both the
government, which estimated the loss to be $60,000, and Rowe, who
estimated the loss to be $0, had proposed. Against this
background, the district court's intended loss calculation was
clearly erroneous and must be reversed.
 B.
 The district court also increased Rowe's base offense
level by two on the grounds that by concealing his interest in the
residence, Rowe violated a judicial order or process requiring him
to disclose all of his property to the bankruptcy court. See
U.S.S.G. 2F1.1(b)(3)(B) (Nov. 1995).
 The Guidelines call for a two level enhancement at
sentencing when a crime of fraud involves the "violation of any
judicial or administrative order, injunction, decree, or process
not addressed elsewhere in the guidelines." See id. "[T]he
rationale for the enhancement is to redress the 'aggravated
criminal intent'" that exists when a defendant engages in wrongful
conduct despite a prior order that directs him not to do so. 
United States v. Shadduck, 112 F.3d 523, 529 (1st Cir. 1997)
(quoting U.S.S.G. 2F1.1 background). The focus upon heightened
criminal intent means that in the case of bankruptcy fraud, the
enhancement will not apply automatically whenever someone fails to
follow a general set of instructions in a bankruptcy rule or form. 
See Shadduck, 112 F.3d at 529-30. Instead, the enhancement applies
only to those who receive a more specific command from the
bankruptcy court and break it. See id.
 There was no such command in Shadduck, but there was such
an order here. Rowe's petition for bankruptcy did not include a
list of his assets. Recognizing this deficiency, the bankruptcy
court sent Rowe a notice advising him to disclose his assets in
their entirety by filing a Statement of Financial Affairs along
with supporting schedules. Unlike a notice of hearing or another
informational announcement that a debtor might receive as a matter
of course upon filing for bankruptcy, see Shadduck, 112 F.3d at
530, this notice was specifically directed at Rowe with a tailored
command to cure the defects in his original petition so as to
provide complete disclosure. Despite a warning that "FAILURE TO
COMPLY WILL RESULT IN APPROPRIATE ACTION," Rowe chose to violate
the notice by continuing to conceal his interest in the residence. 
On these facts, the district court properly concluded that Rowe
violated a judicial order or process within the meaning of 
2F1.1(b)(3)(B) of the Guidelines.
 C.
 The district court also applied a two level enhancement
to Rowe's base offense level on the grounds that he had perjured
himself at trial. In the court's view, "Rowe's [testimonial]
denials of an ownership interest in real property located at 20
Highland Avenue, Nahant, Massachusetts, were untruthful and
material" and thereby warranted a sentencing enhancement for
obstruction of justice. See U.S.S.G. 3C1.1 (Nov. 1995).
 Section 3C1.1 of the Guidelines requires the imposition
of a two level enhancement if a defendant "willfully obstructed or
impeded, or attempted to obstruct or impede, the administration of
justice during the investigation, prosecution, or sentencing of
[an] offense." In order for perjury to support an obstruction of
justice enhancement, the defendant must have given "'false
testimony concerning a material matter with the willful intent to
provide false testimony, rather than as a result of confusion,
mistake, or faulty memory.'" United States v. D'Andrea, 107 F.3d
949, 958 (1st Cir. 1997) (quoting United States v. Dunnigan, 507
U.S. 87, 94 (1993)). We review the court's factual findings in
this regard for clear error. See D'Andrea, 107 F.3d at 958.
 Despite the deferential standard of review that applies,
the district court's decision to apply an obstruction of justice
enhancement in this case cannot stand. As the government concedes
in its appellate brief, "Rowe admitted at trial that he was an
owner of record on the property at all times" and that he had
omitted this interest from his schedule of assets. In other words,
Rowe conceded that he owned the house with his ex-wife and that he
had failed to disclose his interest in the house to the bankruptcy
court. Contrary to what the trial court opined at sentencing, Rowe
never lied about these aspects of his conduct.
 Instead, Rowe simply tried to justify why he did what he
did by claiming that he did not disclose the house to the
bankruptcy court because he felt that the mortgages and attachments
had rendered the asset worthless and because in any event, he
verbally had agreed to give his share of any proceeds of a sale to
his ex-wife if the property ever could be sold. The import of his
testimony was that he did not think that he was legally obligated
to list a worthless asset in his bankruptcy filings. Although the
jury was entitled to disbelieve Rowe's claim that he simply had
made a mistake, the mere fact that he tried to explain himself at
trial cannot alone support an obstruction of justice enhancement. 
See United States v. Akitoye, 923 F.2d 221, 228 (1st Cir. 1991)
("[I]f perjury is less than apparent on the record as a whole, with
due respect for the trial judge's coign of vantage and allowing
reasonable latitude for credibility assessments, the defendant
should be given the benefit of the resultant doubt.")
 IV.
 Conclusion
 For the foregoing reasons, we vacate Rowe's sentence and
remand for further proceedings consistent with this opinion.
 Reversed.